
USDC- BALTIMORE
'25 DEC 10 PM 1:29

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BIANCA A. HUGHLEY** | |
| *Plaintiff,* | |
| v. | |
| **BALTIMORE COUNTY, MARYLAND** | |
| and | |
| **SENECA BAY APARTMENTS (MD) OWNER LLC** | |
| and | |
| **ERIN HARTNETT** *Individually and in her Official Capacity As a Leasing Agent at Seneca Bay Apartment Homes.* | **\*Jury Trial Demanded** |
| and | |
| **JENNIFER MORGAN (STANFORD [MARRIED NAME])** | Civil Case No. 1:25-cv-02705 |
| and | |
| **ANDY (ANDREW) ROHN** *Individually and in his Official Capacity as Assistant Property Manager at Seneca Bay Apartment Homes.* | |
| and | |
| **LETECIA ROLLINS** *Individually and in her Official Capacity as Debt Collector employed by Offit Kurman and assigned as counsel for Seneca Bay Apartments (MD) Owner LLC.* | |
| and | |

1

**POLICE CHIEF MELISSA HYATT**
*Individually and in her Official Capacity as Police Chief of the Baltimore County Police Department.*

and

**OFFICER ROBERT MAZZUCA #6241**
*Individually and in his Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**OFFICER WILLIAM FRANK VENEY #6579**
*Individually and in his Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**OFFICER BRENDAN ALEXANDER HUESMAN #5804**
*Individually and in his Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**OFFICER CARLY HILLIARD #5854**
*Individually and in her Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**OFFICER BRANDON GREELY #6249**
*Individually and in his Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**ELIOT M. LATCHAW #3801**

2

*Individually and in his Official Capacity as Police Captain of the Baltimore County Police Department.*

and

**SERGEANT CLIFTON NELSON #3781**
*Individually and in his Official Capacity as Police Sergeant of the Baltimore County Police Department.*

and

**OFFICER IAN MORRISEY #6415**
*Individually and in his Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**OFFICER CASSANDRA PAULSHOCK #6460**
*Individually and in her Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**SERGEANT JESSE CALLAS #5716**
*Individually and in his Official Capacity as Police Sergeant (Acting Lieutenant) of the Baltimore County Police Department.*

and

**CORPORAL KEVIN WARREN LEHNERT #5090**
*Individually and in his Official Capacity as Police Corporal of the Baltimore County Police Department.*

and

**OFFICER SCOTT BACHMAN #6318**

3

*Individually and in his Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**LIEUTENANT BRENDA EDELIN #3842**
*Individually and in her Official Capacity as Police Lieutenant of the Baltimore County Police Department.*

and

**OFFICER THOMAS NACE #6466**
*Individually and in his Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**OFFICER ROBERT BROWN #6310**
*Individually and in his Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**OFFICER BRITTON BUIE #5582**
*Individually and in his Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**OFFICER NOPPINGER #5972**
*Individually and in her Official Capacity as Police Officer of the Baltimore County Police Department.*

and

**CAPTAIN MICHAEL FRUHLING #4668**
*Individually and in his Official Capacity as Police Captain of the Baltimore County Police Department.*

4

and

**MEDIC 54 JOHN DOE**
*Individually and in his Official Capacity as an*
*EMS Provider employed by the Baltimore*
*County Fire Department.*

*and*

**John Doe Officer #2**
*Individually and in his Official Capacity as*
*Police Officer of the Baltimore County Police*
*Department.*

*Defendants,*

## AMENDED COMPLAINT

Plaintiff Bianca A. Hughley ("Plaintiff"), proceeding pro se, files this Amended Complaint and states:

### JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, the Maryland Declaration of Rights, and Maryland common law.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and supplemental jurisdiction under 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391(b) because all events occurred in Baltimore County, Maryland.

### PARTIES

4. Plaintiff Bianca A. Hughley is an adult resident of Baltimore County, Maryland.

5. Baltimore County, Maryland is a municipal corporation responsible for the policies, training, supervision, customs, and discipline of the Baltimore County Police Department ("BCoPD") and its employees

Individual Defendants (All Sued in Individual and Official Capacities)

6. Chief Melissa Hyatt was, at all relevant times, the Chief of BCoPD and responsible for the training, supervision, and discipline of BCoPD officers and for responding to citizen complaints, including those submitted by Plaintiff.

7. Captain Eliot Latchaw was the commander of the Essex Precinct and had supervisory authority over many of the officer defendants. Plaintiff previously worked under his command and had filed complaints and a lawsuit against him prior to the incidents described herein.

8. Captain Michael Fruhling was the Captain of the White Marsh Precinct and had supervisory responsibility over personnel handling Plaintiff's arrest, detention, and attempted roadside release.

9. Lieutenant Brenda Edelin was the administrative lieutenant to Captain Latchaw, responsible for handling communications and complaints directed to his office. She was aware of Plaintiff's prior complaints but blocked or ignored them.

10. Sergeant Clifton Nelson is a BCoPD sergeant who previously intervened in an earlier incident involving false charges by Officer Larrimore and ordered those charges dropped for lack of probable cause, putting BCoPD on notice about misuse of criminal process against Plaintiff. He later responded during Incident Three.

6

11. Corporal Kevin Lehnert is a BCoPD Corporal who served an improper Peace Order on Plaintiff and later participated in mocking and escalating Plaintiff's arrest during Incident Four.

12. Officer Huesman is a BCoPD officer and field training officer who supervised Officer Veney during Incidents Two and Three.

13. Officer Buie is a BCoPD officer who initiated false assault and trespassing charges against Plaintiff in Incident One.

14. Officer Brown is a BCoPD officer who responded to and charged Plaintiff with an alleged Peace Order violation in Incident Two.

15. Officer Nace is a BCoPD officer who responded to and charged Plaintiff with an alleged Peace Order violation in Incident Two.

16. Officer William Veney is a BCoPD officer who, during the relevant time, was still a trainee in the police academy during Incident 3. He was involved in Incidents Three and Four, including physical restraint of Plaintiff and authoring charging documents without interviewing her.

17. Officer Mazzuca is a BCoPD officer who authored and served his own arrest warrant for Incident Three, left Plaintiff body exposed and stopped another officer from covering Plaintiff, tackled Plaintiff while she was handcuffed, and filed false criminal charges.

18. Officer Brandon Greely was a BCoPD officer involved in Incidents Three and Four, who observed Plaintiff's exposed body and participated in her arrest.

7

19. Officer Scott Bachman is a BCoPD officer who, during Incident Four, forced Plaintiff from her vehicle and repeatedly threatened to break her car window.

20. Sergeant Callas is a BCoPD Sergeant (Acting Lieutenant on the day of Incident Four) who approved, submitted, and maintained false criminal charges in Incident Four.

21. Officer Noppinger is a BCoPD female officer who conducted a physical search of Plaintiff in Incident Four and questioned her about having a gun.

22. Officer Hilliard is a BCoPD female officer who partially dressed Plaintiff in Incident Three with leggings, thong underwear, and a bra but did not provide a shirt, leaving Plaintiff partially unclothed.

23. Officer Paulshock is a BCoPD officer present during Incident Three, as confirmed by body-worn camera listings. Although Plaintiff did not personally interact with her, Paulshock was on scene and, upon information and belief, observed Plaintiff's partial undress and the force used. To the extent she witnessed constitutional violations and failed to intervene or report them, she is liable. She is sued in her individual and official capacities.

24. Officer Morrisey was a BCoPD officer present during Incident Three and recorded body-worn camera footage. Although Plaintiff did not see his specific actions, he was on scene and had the opportunity to observe the force used and the lack of medical or clothing assistance. To the extent he witnessed these violations and failed to intervene or report them, he is liable. He is sued in his individual and official capacities.

25. John Doe Officer #2 is an unidentified BCoPD officer involved in Plaintiff's roadside transport and detention during Incident Four, to be identified through discovery.

26. John Doe EMS Provider ("Medic 54") is an EMS provider who responded during Incident Three, refused to take Plaintiff's vitals unless she provided her name, used physical force on Plaintiff, and failed to provide appropriate medical care.

27. Seneca Bay Apartments (MD) Owner LLC is the apartment complex where Plaintiff resided during the relevant time and is responsible for the actions of its leasing office staff.

28. Jennifer Morgan is a Seneca Bay leasing office manager who made false and misleading statements to police in support of the criminal charges later brought against Plaintiff.

29. Erin Hartnett is a Seneca Bay leasing agent who accessed Plaintiff's confidential application records, contacted Plaintiff's elderly mother without authorization, fabricated statements about Plaintiff, and contributed to the issuance and misuse of a trespass notice.

30. Letecia Rollins is a third-party debt collector and attorney who acted on behalf of Seneca Bay, issued a retaliatory trespass notice, and continued debt collection efforts after a judgment had resolved the matter in Plaintiff's favor.

31. Andy Rohn is a Seneca Bay leasing office assistant manager who participated in the retaliatory conduct and provided statements contributing to criminal charges against Plaintiff.

32. At all relevant times, the individual BCoPD defendants were acting under color of state law and within the scope of their employment.

## FACTUAL BACKGROUND

A. Background

20. Plaintiff brings this action to hold Defendants accountable for their individual roles in the violations described herein.

21. Plaintiff does not seek to overturn or challenge any criminal case. All charges arising from these incidents were either dismissed, nolle prossed, or resolved by a Probation Before Judgment ("PBJ"), which is not a conviction under Maryland law. This lawsuit concerns the constitutional violations that occurred during the investigation, arrest, and prosecution—not the validity of any criminal disposition.

22. Plaintiff was a lawful tenant at Seneca Bay at the time of Incidents One, Two, and Three.

23. Before the incidents described below, the leasing agent, Erin Hartnett, initiated a trespass notice against Plaintiff based on a dispute involving Plaintiff's leasing paperwork and Hartnett's unilateral contact with Plaintiff's elderly mother. This notice prohibited Plaintiff only from entering the leasing office, not the residential property or common areas. The basis and accuracy of this trespass notice are further detailed in Section F.

24. Plaintiff had filed a housing complaint against Seneca Bay prior to the incidents.

10

25. Plaintiff previously worked for the Baltimore County Police Department and had professional interactions with Captain Latchaw, who knew of her medical conditions including Type II diabetes and hypertension.

26. Plaintiff had previously been denied entry into the police academy by Captain Latchaw and later filed a lawsuit involving him. During Plaintiffs employment with the Baltimore County Police Department, Plaintiff was transferred from Captain Eliot Latchaws' command after he attempted to assault her at work.

27. Upon information and belief, Plaintiff's prior complaints and lawsuit contributed to a retaliatory climate in the Essex Precinct.

28. Upon information and belief, officers treated Plaintiff as a problem or target due to internal attitudes shaped by supervisory influence.

29. Upon information and belief, leasing staff and BCoPD officers encouraged Plaintiffs neighbor to continuously call the police over noise complaints and seek peace orders.

30. Plaintiffs neighbor was denied two peace orders before she falsified a third peace order against Plaintiff. Incidents Two, Three, and Four occurred while the Peace Order was under appeal.

31. Plaintiff was never issued a noise complaint by leasing staff or Seneca Bay Apartments (MD) Owner LLC.

32. Plaintiffs neighbor repeatedly called the police in regards to noise on a weekly basis.

11

33. During this time Plaintiff was a flight attendant and was home only three days a week. During this time, BCOPD was at her home almost daily.

34. After Plaintiff contacted the Office of the Chief (Chief Melissa Hyatt), Mobile crisis officer contacted Plaintiff. An investigation was completed and the results acknowledged the neighbor dispute and Plaintiffs frustration with the excessive police presence at her home.

35. Plaintiff neighbor did not show for the appeal and the peace order was dismissed.

36. Plaintiff incorporates all incident-specific facts as though fully stated herein.

37. In 2022, as Plaintiff pursued housing-related complaints and challenged improper fees and retention of her security deposit by Seneca Bay, certain leasing staff and BCoPD officers collectively escalated these civil disputes into criminal matters.

B. INCIDENT ONE – June 17, 2022: False Assault and Trespass Charges by Officer Buie

38. On June 17, 2022, Plaintiff stood outside the entrance door of the Seneca Bay leasing office, in a common area open to tenants, to raise concerns about cigarette smoke entering her apartment.

39. Plaintiff was a lawful tenant with a valid lease and had a right to be on the property.

40. Leasing employees Jennifer Morgan, Erin Hartnett, and Andy Rohn came to the doorway and spoke to Plaintiff in a hostile and retaliatory manner due to her housing complaints.

41. At no time did Plaintiff enter the leasing office, touch or threaten anyone, or refuse any lawful command.

12

42. Plaintiff called BCoPD, but officers failed to arrive.

43. After Plaintiff left, leasing staff called BCoPD and falsely alleged that Plaintiff had assaulted an employee and trespassed at the leasing office.

44. Defendant Officer Buie responded to the complaint.

45. Officer Buie did not interview Plaintiff, did not obtain video footage, did not verify her tenancy, and did not determine whether any valid trespass notice existed.

46. Relying solely on the leasing staff's retaliatory and uncorroborated statements, Officer Buie filed criminal charges against Plaintiff for Second-Degree Assault and Trespassing.

47. The charges lacked factual and legal basis because Plaintiff never entered the office, committed no assault, and was lawfully present as a tenant.

48. The State later entered a nolle prosequi, abandoning prosecution and confirming that probable cause never existed for Buie's charges.

49. Incident One was the first in a series of malicious and retaliatory actions against Plaintiff.

C. INCIDENT TWO – July 2022: Improper Peace Order and False Violation Charge

50. In July 2022, following Incident One, Corporal Kevin Lehnert served Plaintiff with a Peace Order, from her below neighbor who Plaintiff complained about excessive smoking from.

13

51. The Peace Order was improper and retaliatory, and Plaintiff still held a valid lease at Seneca Bay, permitting her presence on the property. The Peace Order was appealed and dismissed at a later date.

52. Leasing staff continued to treat Plaintiff as a problem rather than addressing her legitimate concerns.

53. Plaintiffs neighbor later stated Plaintiff violated the Peace Order by making noise in her apartment, even though Plaintiff did not engage in conduct prohibited by the order.

54. Officer Brown and Officer Nace responded to a report that Plaintiff violated the Peace Order.

55. Officer Brown and Officer Nace failed to investigate the terms of the order, failed to verify Plaintiff's lawful presence in her own home, and failed to recognize the retaliatory pattern by leasing staff and Plaintiffs neighbor.

56. Relying on unverified allegations, Officer Brown initiated criminal charges against Plaintiff for violating the Peace Order.

57. These charges did not result in a conviction.

58. Incident Two further entrenched the retaliatory use of criminal process against Plaintiff.

D. INCIDENT THREE – August 15, 2022: Forced Entry, Exposure, Excessive Force, and Medical Neglect

59. On August 15, 2022, officers from the Essex Precinct went to Plaintiff's home to execute an arrest warrant.

14

60. The warrant had been authored and filed by Officer Mazzuca, who then served his own warrant, instead of using the designated Warrant Task Force. The warrant was based solely on a noise complaint from Plaintiffs neighbor and allegations of Plaintiff slamming her own front door.

61. Serving one's own warrant is contrary to standard practice and removed normal safeguards against abuse.

62. Responding officers included Officer William Veney, who at that time was still a trainee in the police academy, working under his field training officer, Officer Huesman.

63. Plaintiff was at home wearing a thin nightgown when officers entered.

64. Officers did not announce the warrant when Plaintiff opened her door. Officer Veney immediately placed his foot in Plaintiffs door after she advised him he was not allowed to enter. Officer Veney, Officer Mazzuca, and Officer Huesman then forced their way into Plaintiffs home and placed her in handcuffs without allowing her time to get dressed.

65. As officers seized Plaintiff, her breasts and vagina became exposed.

66. Plaintiff repeatedly begged officers to cover her.

67. Upon entry, Sergeant Nelson physically pulled Mazzuca off Plaintiff, stopping the tackle.

68. While Plaintiff was handcuffed, Officer Mazzuca tackled Plaintiff, pinning her shoulder to the floor.

69. Officer Veney grabbed and held Plaintiff's ankles as instructed by Officer Mazzuca, causing Plaintiff's vagina to become further exposed.

15

70. Plaintiff remained fully or partially exposed in front of multiple male officers.

71. Only after Plaintiff had been tackled did Sergeant Nelson enter the room, witnessing Plaintiff's exposed condition and the undue force being applied.

72. After Nelson's intervention, Officer Brandon Greely entered the room, also observing Plaintiff's exposed body and failing to cover her.

73. Plaintiff's female neighbor could see into the apartment and repeatedly begged officers to cover Plaintiff.

74. Officer Huesman attempted to cover Plaintiff with a robe, but Mazzuca stopped him from doing so.

75. Instead of covering Plaintiff, Huesman stood in the doorway holding the robe outward, blocking the neighbor's view while leaving Plaintiff exposed on the floor.

76. After a delay, Officer Hilliard, the only female officer on scene, assisted Plaintiff in putting on thong underwear, leggings, and a bra, but no shirt was provided. Officer Hilliard spoke to Plaintiff in a very demeaning tone while she attempted to locate clothing for Plaintiff. Officer Hilliard acknowledged that there was "clothing everywhere" yet continued to demean Plaintiff while locating clothing.

77. Plaintiff was transported partially unclothed, causing severe humiliation and distress.

78. Plaintiff informed officers she was a Type II diabetic with hypertension, medical conditions known to BCoPD through her prior employment and interactions with Captain Latchaw.

16

79. Medic 54 responded but refused to take Plaintiff's vital signs unless she provided her name.

80. Plaintiff noted that unconscious patients are treated without first providing identification.

81. Medic 54 became confrontational and failed to stabilize Plaintiff, causing her to fall from the gurney due to distress.

82. Medic 54 then physically forced Plaintiff back onto the stretcher.

83. At the hospital, Plaintiff was denied insulin and blood-pressure medication.

84. Plaintiff specifically requested a black female nurse. A Black female physician ensured Plaintiff at least received water. A white male physician treated Plaintiff dismissively; even stating that her blood pressure and blood sugar was high because she had not taken her medication. However, the only reason Plaintiff had not taken her medication was due to the false arrest.

85. Plaintiff eventually waived further treatment so she could complete the booking process.

86. Officer Mazzuca filed the resulting criminal charges, which he had initiated and served himself.

87. The charging documents falsely portrayed Plaintiff as drunk, aggressive and combative; contrary to body-worn camera footage.

E. INCIDENT FOUR – October 17, 2022: Unlawful Arrest at Essex Precinct and 21-Day Incarceration

17

88. After Plaintiff moved out of Seneca Bay, employees Jennifer Morgan, Erin Hartnett, and Letecia Rollins continued retaliatory conduct related to Plaintiff's security deposit and housing complaints.

89. Rollins issued a trespass notice that, by its terms, applied only to entering the leasing office during Plaintiff's tenancy.

90. The trespass notice did not prohibit Plaintiff from being elsewhere on the property after moving out and had nothing to do with police precincts.

91. Plaintiff attempted to mediate the security deposit dispute with leasing staff. October 17, 2022, was the last legal day that Seneca Bay Apartments (MD) Owner LLC had to return Plaintiffs security deposit.

92. Plaintiff parked at a public bus stop across from the leasing office and requested the staff to return her deposit. The staff refused. Plaintiff never exited her vehicle.

93. Plaintiff remained in a public location for a lawful purpose.

94. On October 17, 2022, Plaintiff went to the Essex Precinct to file a police report about the security deposit issue.

95. At the same time, Seneca Bay staff continued to communicate with BCoPD.

96. Morgan and Hartnett relayed misleading or false information about the trespass notice to BCoPD personnel.

97. Despite the limited scope and timing of the trespass notice, officers at the Essex Precinct treated Plaintiff as if she were under a broad trespass from all property.

18

98. Officers on scene included Sergeant Callas, Officer Scott Bachman, Officer Brandon Greely, and others.

99. Officer Noppinger conducted a physical search and questioned Plaintiff about a gun. Plaintiff replied that she does not own a gun.

100. Officer Veney authored the charging documents in Incident Four, despite never interviewing Plaintiff.

101. Veney relied entirely on statements from Morgan and Hartnett and did not review the original language or scope of the trespass notice.

102. Plaintiff was aggressively arrested at the precinct.

103. Bachman forced Plaintiff from her vehicle and repeatedly threatened to break her car window.

104. Plaintiff had committed no offense and was lawfully present at a police station.

105. Corporal Lehnert and Lieutenant Edelin made mocking comments about Plaintiff "having a tough day," despite knowing her history of complaints and the retaliatory context.

106. As Captain Latchaw's administrative Lieutenant, Edelin knew Plaintiff had repeatedly tried to raise officer-misconduct concerns and had prevented direct communication.

107. Plaintiff was transported to White Marsh Precinct; which was the prisoner processing station for Essex Precinct.

108.    Officer Greely was Plaintiffs transport officer and made false statements about the Plaintiff being "banned from the entire property". Plaintiff never read her Miranda Rights during this questioning.

109.    After the arrest, Plaintiff requested medical care at White Marsh Precinct.

110.    Prior to the ambulance transport, a Fire Lieutenant (a non-party EMS Supervisor) spoke with Captain Michael Fruhling, and Captain Michael Fruhling suggested Plaintiff could be released on the side of the road.

111.    The Fire Lieutenant expressed concern that he did not want his paramedics "getting in trouble" for such an unusual release, indirectly acknowledging the arrest lacked normal justification.

112.    Captain Fruhling had a duty to release Plaintiff safely and ensure she was returned to her vehicle and property. Because her car and belongings had been towed by BCoPD, releasing her on the side of the road would have been unsafe and improper.

113.    Despite recognizing problems with the arrest, officers continued processing Plaintiff.

114.    Plaintiff remained incarcerated for approximately 21 days due to being denied bail because of statements made by the leasing staff, officers, and Captain Eliot Latchaw. The prosecutor stated that Plaintiff was a nuisance to the community and trespassed from the Essex Precinct. These allegations stemmed from the retaliatory complaints from one neighbor and the false allegations from Essex Precinct officers and Captain Eliot Latchaw.

115.    All charges arising from Incident Four were ultimately dismissed.

20

F. Leasing Office Retaliation and Debt Collection Conduct

107. Plaintiff filed housing complaints regarding Seneca Bay's handling of her tenancy and complaints about her below neighbors excessive cigarette smoking. The neighbor admitted to smoking three packs of cigarettes a day and refusing to open her window due to utility costs.

108. Erin Hartnett obtained Plaintiff's elderly mother's phone number by accessing Plaintiff's three-year-old leasing application, even though Plaintiff's mother was not listed as an emergency contact.

109. While Plaintiff was in Dallas, Texas for job training, Hartnett contacted Plaintiff's 76-year-old mother, claiming that no one had seen Plaintiff for weeks, without trying to call, email, or contact Plaintiff directly.

110. When Plaintiff returned, she requested to review the document Hartnett had used.

111. Hartnett later mischaracterized this interaction as Plaintiff "snatching" a paper and being threatening, without explaining the nature of the document or why it had been accessed.

112. Hartnett's version was provided to Letecia Rollins, who then issued a trespass notice.

113. The notice applied only to the leasing office and was not immediately provided to police.

114. Rollins also continued to contact Plaintiff about an alleged debt after a court judgment regarding Plaintiff's security deposit had already been resolved in Plaintiff's favor.

115. Plaintiff does not seek to overturn or relitigate the prior civil judgment regarding the security deposit; that matter has already been adjudicated.

116. Instead, Plaintiff seeks to hold Rollins and Seneca Bay accountable for post-judgment conduct as a third-party debt collector, including continuing to attempt to collect a debt that no longer existed, misrepresenting its status, and misusing a trespass notice in retaliation for Plaintiff's protected complaints.

## IV. CLAIMS FOR RELIEF

COUNT I – 42 U.S.C. § 1983 – UNLAWFUL SEIZURE / FALSE ARREST

(Against: Buie, Brown, Nace, Mazzuca, Veney, Greely, Bachman, Callas, Noppinger, John Doe Officer #2)

117. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

118. Defendants initiated and executed arrests and criminal charges against Plaintiff without probable cause in Incidents One, Two, Three, and Four.

119. These arrests violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

120. As a direct and proximate result, Plaintiff suffered loss of liberty, emotional distress, and financial harm.

COUNT II – 42 U.S.C. § 1983 - EXCESSIVE FORCE (Fourth Amendment)

(Against Defendants: Mazzuca, Veney, Greely, Bachman, Noppinger, Morrisey, Paulshock, John Doe Officer #2, John Doe EMS Medic 54)

121. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

122. During Incident Three, Defendant Mazzuca tackled Plaintiff while she was fully handcuffed and posed no threat.

123. Defendant Veney held Plaintiff's ankles while she was on the floor and exposed, causing further bodily exposure and humiliation.

124. Defendants Greely, Morrisey, and Paulshock observed the force used and failed to intervene.

125. In Incident Four, Defendant Bachman threatened to break Plaintiff's car window, forcibly removed her from her vehicle, and escalated the encounter without justification.

126. Defendant Noppinger conducted a physically invasive body search in a degrading manner unrelated to officer safety.

127. John Doe Officer #2 assisted in unnecessary restraint and degrading treatment during transport.

23

128. These actions constituted unreasonable and excessive force under the Fourth Amendment.

129. As a result, Plaintiff suffered physical pain, emotional trauma, and lasting psychological harm.

COUNT III – 42 U.S.C. § 1983 - DEPRIVATION OF DIGNITY, PRIVACY, AND BODILY INTEGRITY (Fourteenth Amendment)

(Against Defendants: Mazzuca, Veney, Greely, Nelson, Hilliard, Morrisey, Paulshock, Noppinger, Hyatt, Latchaw)

130. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

131. Plaintiff's breasts and vagina were exposed in the presence of multiple male officers despite her repeated requests to be covered.

132. Defendants failed to act quickly to protect Plaintiff's privacy and bodily integrity.

133. Defendant Hilliard partially dressed Plaintiff but left her without a shirt, leaving her partially unclothed while handcuffed.

134. Defendant Nelson observed Plaintiff's exposed condition and failed to order immediate covering until after force had already occurred.

135. Defendant Hyatt had ordered increased officer response to Plaintiff's home due to her prior complaints, placing Plaintiff at heightened risk for group misconduct.

24

136.  Defendant Latchaw's retaliatory influence and prior hostility contributed to the pattern of humiliating treatment inflicted on Plaintiff.

137.  The prolonged forced exposure of Plaintiff's intimate body parts constitutes a violation of her substantive due process rights.

138.  Plaintiff suffered severe emotional distress, humiliation, and loss of dignity.

COUNT IV – 42 U.S.C. § 1983 - DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

(Against Defendants: Medic 54, Mazzuca, Greely, Veney, Hyatt, Latchaw, Fruhling)

139.  Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

140.  Plaintiff repeatedly informed officers she was Type II diabetic and hypertensive.

141.  Officers failed to ensure she received insulin, blood-pressure medication, or proper medical clearance.

142.  Medic 54 refused to begin treatment without Plaintiff providing her name, contrary to medical standards.

143.  Medic 54 physically forced Plaintiff back onto a stretcher after she fell due to lack of care.

144.  Defendant Fruhling discussed releasing Plaintiff "on the side of the road," demonstrating disregard for her medical and safety needs.

25

145. Defendant Hyatt and Defendant Latchaw knew of Plaintiff's medical conditions prior to these incidents due to prior employment and complaints.

146. These actions constitute deliberate indifference under the Fourteenth Amendment.

### COUNT V – 42 U.S.C. § 1983 - FIRST AMENDMENT RETALIATION

#### (Against: All Individual Defendants)

147. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

148. Plaintiff's protected activities included filing prior lawsuits, internal complaints, and housing discrimination complaints. All defendants participated directly in, contributed to, or acted in concert with others to retaliate against Plaintiff for engaging in protected First Amendment activity.

149. Defendant Hyatt ordered unusually large officer responses after Plaintiff's complaints reached her office.

150. Defendant Latchaw had a long-standing retaliatory animus toward Plaintiff, documented by prior employment interactions and Plaintiff's lawsuit against him.

151. Defendant Edelin impeded Plaintiff's communication with Latchaw and was aware of ongoing retaliation.

152. Defendants Morgan, Hartnett, and Rollins coordinated statements and misused trespass notices after Plaintiff filed a housing complaint.

26

153. Defendants Buie, Brown, Mazzuca, Veney, and Callas filed charges or escalated encounters immediately following Plaintiff's protected complaints.

154. The cumulative conduct would deter a reasonable person from exercising First Amendment rights.

## COUNT VI – 42 U.S.C. § 1983 - MONELL LIABILITY – FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE

### (Against: Baltimore County)

155. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

156. BCoPD failed to train officers on proper warrant service, medical response, privacy protections, and use of force.

157. BCoPD failed to supervise officers despite repeated complaints made by Plaintiff and others.

158. BCoPD tolerated and upheld retaliatory practices within the Essex Precinct under Defendant Latchaw's leadership.

159. BCoPD's customs and practices were the moving force behind the constitutional violations Plaintiff suffered.

## COUNT VII – MALICIOUS PROSECUTION (Maryland Common Law)

(Against: Buie, Brown, Nace, Mazzuca, Veney, Callas, Latchaw, Morgan, Rohn, Hartnett, Rollins, Seneca Bay Apartments (MD) Owner LLC)

160. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

161. Defendants instituted criminal proceedings without probable cause.

162. Proceedings terminated in Plaintiff's favor (nolle prosequi and dismissals).

163. Defendants acted with malice, demonstrated through:

- Retaliation for prior complaints

- Fabricated statements

- Failure to investigate

- Disregard for evidence proving Plaintiff's innocence

164. Plaintiff suffered arrest, confinement, humiliation, emotional distress, and financial loss.

COUNT VIII – ABUSE OF PROCESS (Maryland Common Law)

(Against: All Individual Defendants)

165. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

166. Defendants misused legal process to achieve retaliatory and improper purposes.

167. Defendants used criminal charges to punish Plaintiff for protected complaints and housing disputes.

COUNT IX – NEGLIGENCE / GROSS NEGLIGENCE

(Against: All Individual Defendants)

168.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

169.    Defendants owed Plaintiff duties of care under Maryland law.

170.    Defendants breached these duties through excessive force, failure to act, negligent investigation, medical neglect, and reckless disregard for Plaintiff's safety and dignity.

171.    Several defendants acted with gross negligence approaching willful disregard of known risks.

COUNT X – MARYLAND CONSUMER DEBT COLLECTION ACT (MCDCA) AND MARYLAND CONSUMER PROTECTION ACT (MCPA)

(Against: Letecia Rollins & Seneca Bay Apartments (MD) Owner LLC)

172.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

173.    After a judgment had resolved Plaintiff's security deposit dispute, Defendant Rollins continued to contact Plaintiff about demanding payment of a debt that no longer existed.

174.    Plaintiff does not seek to overturn or relitigate the prior judgment.

29

175. Plaintiff seeks accountability for post-judgment misconduct only.

176. Rollins misrepresented the existence, amount, and status of the alleged debt.

177. Seneca Bay Apartments (MD) Owner LLC is liable for Rollins's conduct as its authorized agent.

## COUNT XI - MARYLAND CONSTITUTION – ARTICLE 24 (DUE PROCESS)

(This claim is brought against Officers Buie, Brown, Nace, Mazzuca, Greely, Morrisey, Paulshock, Hilliard, Noppinger, Huesman, Bachman, Rohn, Sergeant Nelson, Sergeant (Acting Lieutenant) Callas, Corporal Lehnert, Lieutenant Edelin; as well as supervisory officials Captain Latchaw, Captain Fruhling, and Chief Hyatt, each of whom participated in, directed, or failed to intervene in the violations of Plaintiff's due process rights under Article 24 of the Maryland Declaration of Rights.)

178. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

179. Defendants' actions deprived Plaintiff of liberty without due process of law.

180. This includes false arrests, detention without cause, exposure, denial of medical treatment, and retaliatory prosecution.

## COUNT XII - MARYLAND CONSTITUTION – ARTICLE 26 (UNREASONABLE SEARCH AND SEIZURE)

(Defendants for this Count include all individual BCoPD officers involved in Plaintiff's unlawful searches and seizures, specifically Officers Buie, Brown, Nace, Mazzuca, Greely, Morrisey,

Paulshock, Hilliard, Noppinger, Huesman, Bachman, and Rohn, as well as Sergeant Nelson, Sergeant (Acting Lieutenant) Callas, Captain Fruhling, Captain Latchaw, and Chief Hyatt.)

181.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

182.    Defendants seized Plaintiff's person without probable cause and used excessive force in violation of Article 26.

## COUNT XIII - FALSE ARREST / FALSE IMPRISONMENT

(Maryland Common Law – Against All Individual Officer Defendants)

183.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

184.    Defendants intentionally confined Plaintiff without legal justification.

185.    Plaintiff suffered damages including loss of liberty, emotional harm, and reputational damage.

## COUNT XIV - ASSAULT AND BATTERY

(Maryland Common Law – Against Bachman, Mazzuca, Noppinger, Veney)

186.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

187.    Defendants intentionally applied harmful or offensive force to Plaintiff without justification.

31

188.    Their actions caused physical and emotional injury.

## COUNT XV - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Individual Defendants)

189.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

190.    Defendants' conduct was extreme and outrageous.

191.    Defendants acted intentionally or recklessly.

192.    Plaintiff suffered severe emotional distress.

## COUNT XVI - NEGLIGENT HIRING / SUPERVISION / RETENTION

### (Against Baltimore County & Seneca Bay Apartments)

193.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

194.    Baltimore County failed to supervise, discipline, or train police and EMS personnel despite notice of prior complaints.

195.    Seneca Bay Apartments failed to supervise employees who made false statements and engaged in retaliatory conduct.

196.    These failures were a direct and proximate cause of Plaintiff's injuries.

## COUNT XVII – CIVIL CONSPIRACY

*(42 U.S.C. § 1983 and Maryland Common Law – Against All Individual Defendants)*

This Count is brought against all individually named defendants, including Buie, Brown, Nace, Mazzuca, Veney, Huesman, Greely, Nelson, Bachman, Noppinger, Callas, Lehnert, Edelin, Fruhling, Hyatt, Latchaw, Hartnett, Morgan, and Rollins.

A. §1983 Civil Conspiracy

1. Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

2. Upon information and belief, Defendants entered into an agreement—express or implied—to deprive Plaintiff of her constitutional rights, including her rights under the First, Fourth, and Fourteenth Amendments.

3. The conspiracy is evidenced by coordinated actions across multiple incidents, including:

   a. repeated baseless criminal charges initiated without probable cause;

   b. reliance on false civilian statements known to be untrue;

   c. the use of officers with prior conflicts involving Plaintiff;

   d. supervisory encouragement, approval, or ratification by Defendants Latchaw and Hyatt;

   e. retaliatory conduct following Plaintiff's protected complaints and prior litigation;

   f. coordinated efforts between apartment staff and police officers to criminalize Plaintiff during a housing dispute;

   g. continued prosecution despite exculpatory evidence and lack of any legitimate law-enforcement purpose.

4. Defendants took overt acts in furtherance of this conspiracy, including:

33

a.  filing false charges;

b.  serving unlawful warrants;

c.  using excessive force;

d.  refusing medical care;

e.  fabricating or endorsing false statements;

f.  misusing trespass processes;

g.  coordinating narratives to justify unlawful arrests;

h.  and subjecting Plaintiff to humiliating conditions, including forced exposure.

5.  As a direct and proximate result, Plaintiff suffered violations of clearly established constitutional rights and sustained physical, emotional, and economic damages.

B. Maryland Common-Law Civil Conspiracy

6.  In addition, or in the alternative, Defendants wrongfully combined and agreed with each other to accomplish unlawful acts—including false arrest, malicious prosecution, assault, battery, and abuse of process—or to accomplish lawful acts by unlawful means.

7.  Each Defendant participated in the conspiracy by taking steps to further the collective objective of retaliating against Plaintiff, harming her reputation, disrupting her housing, and depriving her of liberty.

34

8.  Under Maryland law, each Defendant is liable for the tortious acts committed by co-conspirators in furtherance of the conspiracy.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and award:

a.  Compensatory damages in an amount to be determined at trial;

b.  Punitive damages against all individual defendants where permitted;

c.  Declaratory relief finding Defendants violated Plaintiff's constitutional rights;

d.  Injunctive relief, including:

- Mandatory interview of officers following excessive-force complaints;

- mandatory training on detainee dignity and medical response;

- Policy reforms regarding privacy, warrant execution, and medical response;

e.  Policy reforms requiring a female officer to be present at warrant service if the person to be served is a known female.

f.  Attorneys' fees and costs under 42 U.S.C. § 1988 (if counsel is appointed);

f. Any other relief the Court deems just and proper.

Respectfully submitted,

35

Bianca A. Hughley

P.O. Box 24763

Middle River, MD 21220

Email: bianca902@yahoo.com

Date: December 10, 2025